**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| CHARLES LINTZ, Individually ) | |
| And On Behalf of All Others Similarly, ) | |
| Situated ) | Case No. 1:08-CV-03536-WHP |
|        Plaintiff, ) | |
| ) | |
|   v. ) | |
| ) | |
| AGRIA CORPORATION, GUANGLIN ) | |
| LAI, KENNETH HUA HUANG, GARY ) | |
| KIM TING YEUNG, ZHAOHUA QIAN, ) | |
| ZHIXIN XUE, GEOFFREY DUYK, ) | |
| JASMINE MARRERO, CREDIT ) | |
| SUISSE SECURITIES (USA) LLC, ) | |
| HSBC SECURITIES (USA) INC., ) | |
| PIPER JAFFRAY & CO., CIBC ) | |
| WORLD MARKETS CORP., and ) | |
| BROTHERS CAPITAL LIMITED, ) | |
| ) | |
|       Defendants. ) | |

_____)

[Additional Captions on Next Page]

NOTICE OF MOTION BY SENQUAN GAO FOR
CONSOLIDATION OF RELATED CLASS ACTION COMPLAINTS,
APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

Marc I. Gross                         Patrick V. Dahlstrom
Jeremy A. Lieberman                   **POMERANTZ HAUDEKBLOCK**
Fei-Lu Qian                             **GROSSMAN & GROSS LLP**
**POMERANTZ HAUDEK BLOCK**            One North La Salle Street
  **GROSSMAN & GROSS LLP**   Suite 2225
100 Park Avenue                       Chicago, Illinois 60602
New York, New York 10017              Telephone:    (312) 377-1181
Telephone:    (212) 661-1100   Facsimile:    (312) 377-1184
Facsimile:    (212) 661-8665

**Attorneys for Senquan Gao**



JOSEPH R. LEBLANC, Individually )
And On Behalf of All Others Similarly, )
Situated                              )        Case No. 1:08-CV-03886-WHP
      Plaintiff,       )
                                   )
    v.                )
                                   )
AGRIA CORPORATION, GUANGLIN )
LAI, KENNETH HUA HUANG, GARY )
KIM TING YEUNG, ZHAOHUA QIAN, )
ZHIXIN XUE, GEOFFREY DUYK, )
and BROTHERS CAPITAL LIMITED, )
                                   )
      Defendants.     )
                                   )

SANDY LODERMIER, Individually )
And On Behalf of All Others Similarly, )
Situated                              )        Case No. 1:08-CV-04456-WHP
      Plaintiff,       )
                                   )
    v.                )
                                   )
AGRIA CORPORATION, GUANGLIN )
LAI, KENNETH HUA HUANG, GARY )
KIM TING YEUNG, ZHAOHUA QIAN, )
ZHIXIN XUE, GEOFFREY DUYK, )
TERRY MCCARTHY. JASMINE )
MARRERO, CREDIT SUISSE )
SECURITIES (USA) LLC, HSBC )
SECURITIES (USA) INC., PIPER )
JAFFRAY & CO., CIBC WORLD )
MARKETS CORP., and BROTHERS )
CAPITAL LIMITED, )
                                   )
      Defendants.     )
                                   )

TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD

     **PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law

in Support of Senquan Gao's Motion for Consolidation of Related Class Action

Complaints, Appointment of Lead Plaintiff and Approval of Lead Counsel, filed

herewith, proposed Lead Plaintiff Senquan Gao hereby moves this Court, the Honorable William H. Pauley, III, in the United States District Court, Southern District of New York, Courtroom 11D at the Daniel Patrick Moynihan United States District Courthouse, 500 Pearl Street, New York, New York, on September 5, 2008, at 11:00 a.m., for an Order:

1.    Consolidating all actions filed in the Southern District of New York which are related to above-captioned class action for all purposes, pursuant to Fed. R. Civ. P. 42(a); and

2.    Pursuant to Section 27(a)(3)(B) of the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995:

(a)    appointing Senquan Gao as Lead Plaintiff for the Class of purchasers of Agria Corporation ("Agria" or the "Company") securities, who purchased or otherwise acquired Agria securities pursuant and/or traceable to the Company's initial public offering on or about November 6, 2007, and

(b)    approving Lead Plaintiff's selection of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel for the Class.

Dated: June 10, 2008

Respectfully submitted,

**POMERANTZ HAUDEK BLOCK
 GROSSMAN & GROSS LLP**
  /s
Marc I. Gross
Jeremy A. Lieberman
Fei-Lu Qian
100 Park Avenue
New York, New York 10017
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665

**POMERANTZ HAUDEK BLOCK
 GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
One North La Salle Street
Suite 2225
Chicago, Illinois 60602
Telephone:     (312) 377-1181
Facsimile:     (312) 377-1184

**Attorneys for Senquan Gao**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| CHARLES LINTZ, Individually )<br>And On Behalf of All Others Similarly, )<br>Situated )<br>        Plaintiff, )<br> )<br>   v. )<br> )<br>AGRIA CORPORATION, GUANGLIN )<br>LAI, KENNETH HUA HUANG, GARY )<br>KIM TING YEUNG, ZHAOHUA QIAN, )<br>ZHIXIN XUE, GEOFFREY DUYK, )<br>JASMINE MARRERO, CREDIT )<br>SUISSE SECURITIES (USA) LLC, )<br>HSBC SECURITIES (USA) INC., )<br>PIPER JAFFRAY & CO., CIBC )<br>WORLD MARKETS CORP., and )<br>BROTHERS CAPITAL LIMITED, )<br> )<br>        Defendants. )<br>_____) | Case No. 1:08-CV-03536-WHP |

[Additional Captions on Next Page]

MEMORANDUM OF LAW IN SUPPORT OF SENQUAN GAO'S
MOTION FORCONSOLIDATION OF RELATED CLASS ACTION COMPLAINTS,
<u>APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL</u>

Marc I. Gross
Jeremy A. Lieberman
Fei-Lu Qian
**POMERANTZ HAUDEK BLOCK**
   **GROSSMAN & GROSS LLP**
100 Park Avenue
New York, New York 10017
Telephone:     (212) 661-1100
Facsimile:     (212) 661-8665

Patrick V. Dahlstrom
**POMERANTZ HAUDEKBLOCK**
   **GROSSMAN & GROSS LLP**
One North La Salle Street
Suite 2225
Chicago, Illinois 60602
Telephone:     (312) 377-1181
Facsimile:     (312) 377-1184

**Attorneys for Senquan Gao**

_____

JOSEPH R. LEBLANC, Individually          )
And On Behalf of All Others Similarly,   )
Situated                                 )        Case No. 1:08-CV-03886-WHP
    Plaintiff,       )
                                         )
   v.                     )
                                         )
AGRIA CORPORATION, GUANGLIN              )
LAI, KENNETH HUA HUANG, GARY             )
KIM TING YEUNG, ZHAOHUA QIAN,            )
ZHIXIN XUE, GEOFFREY DUYK,               )
and BROTHERS CAPITAL LIMITED,            )
                                         )
    Defendants.      )
_____)

_____

SANDY LODERMIER, Individually            )
And On Behalf of All Others Similarly,   )
Situated                                 )        Case No. 1:08-CV-04456-WHP
    Plaintiff,       )
                                         )
   v.                     )
                                         )
AGRIA CORPORATION, GUANGLIN              )
LAI, KENNETH HUA HUANG, GARY             )
KIM TING YEUNG, ZHAOHUA QIAN,            )
ZHIXIN XUE, GEOFFREY DUYK,               )
TERRY MCCARTHY. JASMINE                  )
MARRERO, CREDIT SUISSE                   )
SECURITIES (USA) LLC, HSBC               )
SECURITIES (USA) INC., PIPER             )
JAFFRAY & CO., CIBC WORLD                )
MARKETS CORP., and BROTHERS              )
CAPITAL LIMITED,                         )
                                         )
    Defendants.      )
_____)

   Proposed Lead Plaintiff Senquan Gao ("Movant") respectfully submits this memorandum

of law in support of the motion for an Order:

   1.   Consolidating all actions filed in the Southern District of New York which are

related to above-captioned class action for all purposes, pursuant to Fed. R. Civ. P. 42(a); and

2.    Pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)    appointing Senquan Gao as Lead Plaintiff for the Class of purchasers of the securities of Agria Corporation ("Agria") or (the "Company"), who purchased or otherwise acquired Agria's securities pursuant and/or traceable to the Company's initial public offering on or about November 6, 2007,[1] and

(b)    approving Lead Plaintiff's selection of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel for the Class.

## BACKGROUND

Three class action complaints, captioned above, alleging federal securities violations have been filed in the Southern District of New York on behalf of all public investors who purchased or otherwise acquired Agria's securities pursuant and/or traceable to the Company's initial public offering on or about November 6, 2007, (the "Class Period").

Each of the Complaints similarly alleges that defendants issued a series of false and misleading statements to the market which artificially inflated the Company's securities. Specifically, the Defendants failed to disclose that the Company had not secure enforceable employment agreements with its Chief Operating Officer and other key executives prior to its IPO and thus, these failures would significantly affect its ability to execute its stated operating strategies due to the executives' critical importance to the Company. In fact, the Company was in active negotiations with its key executives to provide multi-million dollar compensation packages in order to secure their future services. As such, these dramatically increased

---

[1] Excluded from the Class are defendants; members of the individual defendants' immediate family; officers, directors, subsidiaries or affiliates of the defendants; any entity in which any excluded person has a controlling interest; and legal representatives, heirs, successors or assigns of any of the foregoing.

compensation expenses would materially impact the Company's financial results going forward, specifically by increasing its general and administrative expenses, and decreasing its operating profit and margins.

On April 7, 2008, after the close of the market, Agria shocked investors when it announced that its auditors were unable to begin their audit of the Company's financial statements for 2007 due to various accounting and payment issues. The Company warned that "given the substantial delay in the commencement of the audit process, there is a risk that the Company may not be able to file its Annual Report" on time, and retracted its previously provided guidance for the fourth quarter of 2007, and first quarter and full year of 2008. The Company also announced that its Chief Operating Officer ("COO"), Defendant Xue, had resigned. Further, the Company disclosed for the first time that its Chief Executive Officer ("CEO") was actively involved in protracted compensation negotiations with the COO and other key executives. These executives stood to receive $18 million in cash and transfer of Company shares (which represented 22% of the Company) so as to "provide incentive for their continuing service and align their interests with those of the shareholders." As the Company noted, payment of cash and/or shares to the COO and other executives "as compensation and incentive for their past and continuing services in connection with the proposed transaction will likely result in material compensation charges to the Company in the period in which the payment is made."

Upon the release of this news, shares of the Company's securities declined $3.34 per share, or almost 38 percent, to close on April 8, 2008 at $5.46 per share, on unusually heavy trading volume. This closing price on April 8, 2008 represented a cumulative loss of $11.04, or 66.9 percent, of the value of the Company's shares at the time of its IPO just months prior.

## ARGUMENT

## I.        THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  *See also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Manual for Complex Litigation (3d)* § 20.123, at 13-14 (1995).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed." 15 U.S.C. § 77z-1(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

As noted above, three actions have been filed in the Southern District of New York alleging similar factual and legal grounds to support allegations of violations by the defendants of Sections 11 and 15 of the Securities Act.[1] Accordingly, the above-referenced cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## II.       SENQUAN GAO SHOULD BE APPOINTED LEAD PLAINTIFF

Sections 27(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiffs in class actions brought under the Securities Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a  published notice of

---

[1] *Lintz v. Agria Corp. et al.* also alleges violations by the defendants under Section 12(a)(2) of the Securities Act.

class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 77z-1(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii).

As set forth below, the Movant satisfies all three of these criteria and, thus, is entitled to the presumption that he is the most adequate plaintiff of the Class. Accordingly, Senquan Gao should be appointed Lead Plaintiff.

### A.    Movant Is Willing to Serve as Class Representative

On April 11, 2008, counsel in the first filed action against the defendants, referenced above as *Lintz v. Agria Corp., et al.*, Civil Action No. 1:08 CV-03536 (WHP), caused a notice to be published pursuant to Sections 27(a)(3)(A)(i) of the PSLRA announcing that a securities class action had been filed against the defendants herein, and advising purchasers of Agria securities that they had until June 10, 2008, to file a motion to appointed as Lead Plaintiff. *See* Exhibit A.

The Movant has filed the instant motion pursuant to the Notice and has attached his Certification attesting that he is willing to serve as a Lead Plaintiff for the Class and is willing to provide testimony at deposition and trial, if necessary. *See* Exhibit B. Accordingly, the Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

B.      **The Movant Has The Largest Financial Interest in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii); *see In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

Here, the Movant (1) acquired 4,000 shares of Agria Securities, (2) has retained all of his shares (3) spent $38,250 in his purchases of Agria shares; and (4) has suffered a loss of $22,172. *See* Exhibit B.

Movant is not aware of any other plaintiff who has suffered larger losses, and, accordingly, satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the Class.

C.      **Movant Satisfies the Requirements of**
        **Rule 23 of the Federal Rules of Civil Procedure**

Section 27(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification

— a prima facie showing that the Movant satisfy the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

The Movant fulfills all of the requirements of Rule 23. The Movant shares substantially similar questions of law and fact with the members of the class and their claims are typical of the members of the class. The Movant and all members of the class allege that defendants violated the Securities Act by publicly disseminating a series of false and misleading Registration Statement concerning Agria. Movant, as did all of the members of the Class, purchased or otherwise acquired Agria securities pursuant to and/or traceable to the IPO and were damaged thereby. These shared claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the class.

Thus, the close alignment of interests between the Movant and other Class members, as well as the strong desire of the proposed Lead Plaintiff to prosecute these actions on behalf of the Class, provide ample reasons to grant the Movant's motion to serve as Lead Plaintiff.

### D. Movant Fairly and Adequately Represents the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing the Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

Movant's ability and desire to fairly and adequately represent the Class have been discussed in Section C, above. Movant is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, the Movant should be appointed Lead Plaintiff for the Class.

## III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 77z-1(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Movant has selected the law firm of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel. The Pomerantz firm is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume, attached hereto as Exhibit C. As a result of their extensive experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## <u>CONCLUSION</u>

For the foregoing reasons, Movant respectfully request s the Court issue an Order (a) consolidating the Related Actions; (b) appointing Senquan Gao as Lead Plaintiff of the Class; (c) approving Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel; and (d) granting such other relief as the Court may deem to be just and proper.

Dated: June 10, 2008

Respectfully submitted,

**POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS LLP**
  /s
Marc I. Gross
Jeremy A. Lieberman
Fei-Lu Qian
100 Park Avenue
New York, New York 10017
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665

**POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
One North La Salle Street
Suite 2225
Chicago, Illinois 60602
Telephone:    (312) 377-1181
Facsimile:    (312) 377-1184

**Attorneys for Senquan Gao**

# EXHIBIT A

Yahoo!   My Yahoo!   Mail   More

New User? Sign Up    Sign In    Help

**YAHOO!** FINANCE

Search    **WEB SEARCH**

   

GET QUOTES    Finance Search

**Press Release**                    Source: Schiffrin Barroway Topaz & Kessler, LLP

# Shareholder Class Action Filed Against Agria Corporation by the Law Firm of Schiffrin Barroway Topaz & Kessler, LLP

Friday April 11, 5:00 pm ET

RADNOR, Pa., April 11 /PRNewswire/ -- The following statement was issued today by the law firm of Schiffrin Barroway Topaz & Kessler, LLP:

Notice is hereby given that a class action lawsuit was filed in the United States District Court for the Southern District of New York on behalf of all purchasers of securities of Agria Corporation (NYSE: GRO - News; "Agria" or the "Company") pursuant or traceable to the Company's November 6, 2007 Initial Public Offering ("IPO").

ADVERTISEMENT



If you wish to discuss this action or have any questions concerning this notice or your rights or interests with respect to these matters, please contact Schiffrin Barroway Topaz & Kessler, LLP (Darren J. Check, Esq. or Richard A. Maniskas, Esq.) toll free at 1-888-299-7706 or 1-610-667-7706, or via e-mail at info@sbtklaw.com.

The Complaint charges Agria Corporation and certain of its officers and directors with violations of the Securities Act of 1933. Agria engages in the research and development, production, and sale of upstream agricultural products in the People's Republic of China.

More specifically, the Complaint alleges that the Company failed to disclose and misrepresented the following material adverse facts which were known to defendants or recklessly disregarded by them: (1) that the Company had failed to secure enforceable employment agreements with its Chief Operating Officer ("COO") and other key executives prior to its IPO; (2) that the Company was in active negotiations with its COO and other key executives to provide multi-million dollar compensation packages in order to secure their future services (which were key to the Company's future success); (3) that these dramatically increased compensation expenses would materially impact the Company's financial results going forward, specifically by increasing its general and administrative expenses, and decreasing its operating profit and margins; (4) that, as a result of the above, the Company's financial results following its IPO would in no way be analogous to the financial statements provided in its Registration Statement; (5) that the failure of the Company to successfully negotiate enforceable employment agreements with its COO and other key executives would significantly affect its ability to execute its stated operating strategies due to the executives' critical importance to the Company; (6) that various accounting and payment issues, which existed at the time of the IPO, would subsequently prohibit the Company's auditors from completing its audit of the Company's financial statements; (7) that the Company lacked adequate internal and financial controls; and (8) that, as a result of the foregoing, the Company's Registration Statement was false and misleading at all relevant times.

On November 6, 2007, the Company conducted its IPO. In connection with its IPO, the Company filed a Registration Statement with the SEC. The IPO was a financial success for the Company and its selling shareholder, Brothers Capital Limited, as they raised over $282 million by selling

## Related Quote



GRO    6.19    +0.16    News
**View Detailed Quote**
Delayed 20 mins
Providers · Disclaimer

### Related News Stories

- Bank of Commerce Holdings, Aristotle Corp and SunLink Health Systems lead small-cap percentage gainers - SmallCapInvestor.com (11:43 am)

- Agria Corp. Offers 'Bogeyman Trade' Opportunity - at Seeking Alpha (Thu Jun 5)

- Pomerantz Announces June 10 is Lead Plaintiff Deadline for Agria Corporation Investors -- GRO - PrimeNewswire (Wed Jun 4)

- Agria, Royale Energy: Biggest Price Gainers (GRO, ROYL) - at The Wall Street Journal Online (Tue Jun 3)

More...

- By industry: Farm Products

ADVERTISEMENT



**Inside Yahoo! Finance**

**IPO Center**

- IPO Pricings
- Post IPO Performance
- IPO News

**RSS Feeds**

Add headlines to your personalized My Yahoo! Page ( About My Yahoo! and RSS )

GRO Headlines

17,150,000 of the Company's securities to investors at a price of $16.50 per share.

Then on April 7, 2008, after the close of the market, Agria shocked investors when it announced that its auditors were unable to begin their audit of the Company's financial statements for 2007 due to various accounting and payment issues. The Company warned that "given the substantial delay in the commencement of the audit process, there is a risk that the Company may not be able to file its Annual Report" on time, and retracted its previously provided guidance for the fourth quarter of 2007, and first quarter and full year of 2008. The Company also announced that its COO had resigned. Further, the Company disclosed for the first time that its Chief Executive Officer was actively involved in protracted compensation negotiations with the COO and other key executives. These executives stood to receive $18 million in cash and transfer of Company shares (which represented 22% of the Company) so as to "provide incentive for their continuing service and align their interests with those of the shareholders." As the Company noted, payment of cash and/or shares to the COO and other executives "as compensation and incentive for their past and continuing services in connection with the proposed transaction will likely result in material compensation charges to the Company in the period in which the payment is made."

Upon the release of this news, shares of the Company's securities declined $3.34 per share, or almost 38 percent, to close on April 8, 2008 at $5.46 per share, on unusually heavy trading volume. This closing price on April 8, 2008 represented a cumulative loss of $11.04, or 66.9 percent, of the value of the Company's shares at the time of its IPO just months prior.

Plaintiff seeks to recover damages on behalf of class members and is represented by the law firm of Schiffrin Barroway Topaz & Kessler which prosecutes class actions in both state and federal courts throughout the country. Schiffrin Barroway Topaz & Kessler is a driving force behind corporate governance reform, and has recovered billions of dollars on behalf of institutional and individual investors from the United States and around the world.

For more information about Schiffrin Barroway Topaz & Kessler or to sign up to participate in this action online, please visit http://www.sbtklaw.com

If you are a member of the class described above, you may, not later than June 10, 2008, move the Court to serve as lead plaintiff of the class, if you so choose. A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation. In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class. Your ability to share in any recovery is not, however, affected by the decision whether or not to serve as a lead plaintiff. Any member of the purported class may move the court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member.

```
CONTACT:   Schiffrin Barroway Topaz & Kessler, LLP
           Darren J. Check, Esq.
           Richard A. Maniskas, Esq.
           280 King of Prussia Road
           Radnor, PA 19087
           1-888-299-7706 (toll free) or 1-610-667-7706
           Or by e-mail at info@sbtklaw.com
```

Source: Schiffrin Barroway Topaz & Kessler, LLP

✉ Email Story      🔔 Set News Alert      🖨 Print Story      Yahoo! Buzz

Search News

Sponsor Results

Trade Forex Online with GFT
Free Practice Account & Training. Trade 24 hrs-a-day 5.5 days a week.
www.GFTforex.com

Stocks Ready To Soar
Hot News Alerts, Huge Profits 1000%+, Stock Near Explosive Breakout.
www.otcstockexchange.com

Denver personal finance planning
Financial planning & investment Don't Wait To Build A Secure Future.
FocusedFinancialPlanning.com
                   (What's This?)

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback

Copyright © 2008 PR Newswire. All rights reserved. Republication or redistribution of PRNewswire content is expressly prohibited without the prior written consent of PRNewswire. PRNewswire shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.

# EXHIBIT B

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1.    I, Senquan Gao, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Agria Corp. ("GRO"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my GRO securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Exchange Act of 1934 or the Securities Act of 1993.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Pomerantz Firm will exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in GRO securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed____5/30/08_____, at    ____Toronto, Ontario Canada____
            (Date)                        (City, State)

                                        _____
                                        (Signature)

                                        ____Senquan Gao_____
                                        (Type or Print Name)

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|---|---|---|---|
| 12/3/07 | Purchase | 3000 | $9.65 per share |
| 2/28/08 | Purchase | 1000 | $9.30 per share |
| 4/8/08 | Purchase | 1500 | $5.31 per share |
| 4/8/08 | Purchase | 1400 | $5.35 per share |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**AGRIA CORP**                                                        05/30/2008vk
**CLASS PERIOD:  NOV 06 2007 IPO**
**Plaintiff Senquan Gao**

| Date | Shares Pur(Sld) | Price | Amount | Damages* Per Sh @ $4.5700 | Damages |
|------|-----------------|-------|--------|---------------------------|---------|
| 12/3/2007 | 3,000 | $9.6500 | ($28,950) | $5.0800 | $15,240 |
| 2/28/2008 | 1,000 | $9.3000 | ($9,300) | $4.7300 | $4,730 |
| 4/8/2008 | 1,400 | $5.3500 | ($7,490) | $0.7800 | $1,092 |
| 4/8/2008 | 1,500 | $5.3100 | ($7,965) | $0.7400 | $1,110 |
|  | 6,900 |  | ($53,705) |  | **$22,172** |

*  Cplt Filed Apr 11 2008; Closing Price $4.57

damages\gro2

# EXHIBIT C

## POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP

Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz Firm" or "Firm") is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation. The Firm was founded by the late Abraham L. Pomerantz, one of the "pioneers who developed the class action/derivative action field."[1] Mr. Pomerantz rose to national prominence as a "champion of the small investor" and a "battler against corporate skullduggery."[2] Recently, the Institutional Shareholder Services ranked the Pomerantz Firm third in the country in 2005 for the highest average settlement amount achieved on behalf of clients.[3]

For over 70 years, the Firm has specialized in representing victims of securities frauds, breaches of fiduciary duty, corporate mismanagement, and price fixing conspiracies, as it continues the proud tradition established by Mr. Pomerantz. The Firm also has thriving ERISA, healthcare and consumer litigation practices. Pomerantz has set important precedents in its practice areas. The Firm is led by senior partner Stanley M. Grossman, a nationally prominent litigator. Mr. Grossman recently argued *Stoneridge Investment Partners v. Scientific Atlanta, Inc.*, to the United States Supreme Court, and made strong arguments that a cause of action exists against secondary actors for "scheme liability" under Section 10(b) of the Securities Exchange Act of 1934. Although the Court affirmed, by a vote of 5 to 3, the decision of the Court of Appeals dismissing the claims against the two "secondary" defendants, it made statements that we believe will be helpful to plaintiffs in future cases. For example, the Court ruled that "secondary actors" who engage in deceptive *conduct* can be

[1] New York Law Journal (August 1, 1983).

[2] Robert J. Cole, *Class Action Dean*, The National Law Journal, Vol. 1 No. 2 at 1 (Sept. 25, 1978).

liable for violating Section 10(b) even if they never make any public false statements.  The Court also left open the possibility that accountants and investment banks, which operate in the "realm of financing business" might be subject to scheme liability claims in situations where others would not be.  128 S. Ct. 761 (2008).

Courts have consistently acknowledged the ability of the Pomerantz Firm to vigorously pursue the claims of class members.  In granting the fee request in *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP) (S.D.N.Y.), where the Firm successfully negotiated a $100 million settlement for the class in a complex antitrust and securities case, Judge Patterson stated:

> I am going to approve the settlement, and I am going to approve the attorneys fees that you have requested with cost.
>
> As I am doing it so summarily, does not mean I have not considered it at length.  But it does not need that much consideration because I've observed the conduct of the attorneys involved here.  They get the work done, and it was a tough one.
>
> I think that there were a lot of people who thought there was going to be no recovery at all in this case.

In appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Sec. Litig.*, No 05-CV0725-W-ODS (W.D. Mo.), a class action which involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."

The Pomerantz Firm, as Lead Counsel, negotiated a $146.25 million settlement in *In re Charter Communications Sec. Litig.*, 02 Cv1186 (E.D. Mo.).  Approving the settlement, the Court

---

[3] Securities Class Action Services 50 for 2005.

2

praised the Firm's efforts: "This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial." In awarding fees to the Pomerantz Firm, the Court cited "the vigor with which Lead Counsel . . . investigated claims, briefed the motions to dismiss, and negotiated the settlement . . .."

In approving the $100 million settlement in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), a case where the Pomerantz Firm served as co-lead counsel, Judge Tormey stated, "It was a pleasure to work with you. This is a good result. You've got some great attorneys working on it."

In *Sherleigh Associates Inc. Profit Sharing Plan v. COHR, Inc.,* No. 98-3028-JSL (BQRx) (C.D. Cal.), where as co-lead, the Pomerantz Firm helped obtained a substantial settlement, the court stated: "This is a good job. I don't always think all jobs are good. This one is a good job." And in *In re Wiring Devices Antitrust Litigation*, MDL Docket No. 331 (E.D.N.Y. Sept. 9, 1980), where the Firm was again lead counsel, Chief Judge Jack B. Weinstein stated:

> Counsel for the plaintiffs I think did an excellent job . . . . They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial.

Certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y.), Judge Lynch stated that the Pomerantz Firm had "ably and zealously represented the interests of the class." Numerous courts have agreed with that assessment. *See, e.g.*, *Steinberg v. Nationwide Mutual Insurance Co.*, 99 CV 7725 (E.D.N.Y.) (Judge Spatt, in granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence

to serve as class counsel in this motion for class certification." 2004 U.S. Dist. LEXIS 17669 at *24); *Mercury Savings and Loan*, CV 90-87 LHM (C.D. Cal. 1995) (Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."); *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.) (Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering...[in] an extremely complex matter," and concluded that the case was "very well-handled and managed." Tr. at 6, 5/20/92; Tr. at 10, 10/10/92); *Nodar v. Weksel*, 84 Civ. 3870 (S.D.N.Y.) (Judge Broderick acknowledged "that the services rendered [by the Pomerantz Firm] were excellent services from the point of view of the class represented, [and] the result was an excellent result . . . ." Tr. at 21-22, 12/27/90); *Klein v. A.G. Becker Paribas, Inc.*, 83 Civ. 6456 (S.D.N.Y. 1987) (Judge Goettel complimented the Firm for providing "excellent . . . absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87)); *Digital Securities Litigation*, 83-3255Y (D. Mass.) (Judge Young lauded the Firm for its "[v]ery fine lawyering" (Tr. at 13, 9/18/86); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y. 1977) (Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."); *Rauch v. Bilzerian,* 88 Civ. 15624 (Sup. Ct. N.J. 1991) (The Court referred to the partners from the Pomerantz Firm who had tried the case as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court.").

Pomerantz has a long legacy of setting important precedents. Most recently, the Firm was before the Supreme Court on an issue of critical importance — whether scheme liability is actionable

under § 10(b) and Rule 10b-5(a) and (c).  *See Stoneridge Investment Partners v. Scientific-Atlanta*, No. 06-43 (2007).  While affirming the dismissal of two "secondary actors," the Court made numerous statements that make clear that "scheme liability" is still alive, al be it, in more limited circumstances.  Among the many important reported decisions obtained on behalf of the Pomerantz Firm's clients are: *EBC I, Inc. v. Goldman Sachs & Co*., 2005 N.Y. LEXIS 1178 (June 7, 2005) (New York State's highest court found for the first time that a lead managing underwriter can owe fiduciary duties to an issuer in connection with the issuer's IPO even where the underwriting contract does not establish any fiduciary relationship); *Ross v. Bernhard*, 396 U.S. 531 (1970) ((establishing the right to trial by jury of derivative actions); *Kronfeld v. TWA*, 832 F.2d 726 (2d Cir. 1987) (holding, *before Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that a corporation may have a duty to disclose ongoing merger negotiations); *In re Summit Medical Systems Secs. Litig.*, 294 F.3d 969, 978 (8th Cir. 2002) (holding that standing existed for aftermarket purchasers who could trace their purchase of shares to a false registration); *Wool v. Tandem, Inc.*, 818 F.2d 1433 (9th Cir. 1987) (establishing that "in and out" traders may recover damages under the federal securities laws); *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190 (2d Cir. 1984) (establishing limits on advisory fees charged by investment advisors under the Investment Company Act); *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971) (establishing duty of investment advisor to disclose all material facts to funds' outside directors); *In re Comverse Technology Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. 2007) (clarifying the standards for calculating the "largest financial interest" in a manner consistent with the Supreme Court's ruling on loss causation in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005)).  *See, e.g., Pearlman v. Feldmann*, 219 F.2d 173 (2d Cir. 1955)*DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS

2005 (S.D.N.Y. 2005); *Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) (GEL);

*DeMarco v. Robertson Stephens*, 318 F. Supp. 2d 110 (S.D.N.Y. 2004); *In re Green Tree Fin. Corp.*

*Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002); *Drolet v.*

*Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997); *In re Texas International Company Sec. Litig.*,

[1988-89 Decisions] Fed. Sec. L. Rep. (CCH) ¶ 94,125 (W.D. Okla. 1988); *Fisher v. Kletz*, 266 F.

Supp. 180 (S.D.N.Y. 1967).

Moreover, among the class and shareholder derivative actions in which the Pomerantz Firm

was lead or co-lead counsel are:

> *In re Salomon Analysts AT&T Litig.*, 91 Civ. 5471 (S.D.N.Y.)
> ($74.75 million recovery).
>
> *In re Charter Communications, Inc. Secs. Litig.*, 4:02CV1186 (E.D.
> Mo. 2005) ($146.25 million recovery);
>
> *In re Elan Corp. Sec. Litig.*, No. 02-CV-0865(RMB) (S.D.N.Y. 2005)
> ($75 million recovery);
>
> *In re Safety-Kleen Corp. Stockholders Litigation*, C.A. No. 3:00-CV-
> 736-17 (D.S.C. 2004) ($54.5 million recovery);
>
> *In re Summit Metals, Inc. v. Gray, No.,* 98-2870 (D. Del. 2004) ($43
> million judgment and required turnover of the stock of two
> corporations);
>
> *In re Livent, Inc. Noteholders Securities Litigation* Case No. 98-CV-
> 7161 (S.D.N.Y. 2003) ($17.25 million aggregate settlements; $36
> million additional judgment (with interest);
>
> *In re American Italian Pasta Company Sec. Litig.*, No. 05-CV-0725
> (W.D. Mo. 2008) ($25 million settlement from the company; case is
> continuing against outside auditor);
>
> *In re Methionine Antitrust Litigation*, Master File No. C-99-3491-
> CRB, MDL No. 1311 (N.D. Cal. 2002) ($107 million recovery);
>
> *In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 Cal
> (N.D. Cal. 2000) (over $82 million recovery);

*Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (Supreme Court, N.Y., Onondaga County 1998) ($100 million recovery);

*In re First Executive Corporation Securities Litigation*, CV-89-7135 DT (Kx) (C.D. Cal. 1994) ($102 million partial recovery);

*In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP) (S.D.N.Y. 1994) ($100 million recovery);

*Mardean Duckworth v. Country Life Insurance Co.,* No. 98 CH 01046 (C.D. Ill. 2000) ($45 million recovery);

*In re National Health Laboratories, Inc. Securities*, CV-92-1949-H (CM) (S.D. Cal. 1995) ($64 million recovery);

*In re Boardwalk Marketplace Securities Litigation*, M.D.L. Docket No. 712 (D. Conn. 1994) (over $66 million benefit);

*In re Woolworth Corporation Securities Class Action Litigation*, 94 Civ. 2217 (RO) (S.D.N.Y. 1997) (recovery of $20 million);

*Frank v. Paul* (CenTrust Savings Bank Securities Litigation), 90-0084-CIV (S.D. Fla. 1996) ($20 million recovery);

*Wallace v. Fox*  Docket No. 3:96 - CV - 00772 (PCD) (D. Conn. 1997) (Northeast Utilities Shareholder Derivative Action) ($25 million recovery);

*Hurley v. FDIC*, Civil Action No. 88-1940-T (D. Mass. 1992) ($29 million judgment after trial against two former officers of First Service Bank for Savings);

*In re Ocean Drilling & Exploration Company Shareholders Litigation*, Civ. No. 11898 (Del. Ch. 1991) ($38 million cash benefit);

*In re Telerate, Inc. Shareholders Litigation*, Civ. 1115 (Del. Ch. 1989) ($95 million benefit).

*In re AM International, Inc. Securities Litigation*, M-21-31, MDL Docket No. 494 (S.D.N.Y. 1987) ($23 million recovery);

*In re Data Point Securities Litigation*, SA-82-CA-338 (W.D. Tex. 1987) ($28.4 million recovery); and

*In re National Student Marketing Securities Litigation*, MDL Docket No. 105 (D.D.C. 1983) ($35 million recovery);

Brief biographies of the Firm's lawyers are provided below:

## <u>ROBERT J. AXELROD</u>

Robert J. Axelrod is a partner at Pomerantz.  Mr. Axelrod practices securities, antitrust, and insurance and consumer litigation.  As a member of the Firm's Healthcare and Consumer Group, Mr. Axelrod currently is prosecuting actions on behalf of clients including the American Medical Association, the American Dental Association, and the Medical Society of the State of New York, against such insurers as United Healthcare Corporation, CIGNA, Aetna, Oxford, Health Net, Inc., and Nationwide.  Mr. Axelrod was on the successful trial team in *Addison v. American Medical Security*.  Additional healthcare cases that Mr. Axelrod has litigated with partner D. Brian Hufford, include *American Medical Association v. United Healthcare Corporation*, *American Dental Association v. Aetna, Inc.,* and *Wachtel v. Health Net Inc.*  In *Health Net*, 01-4183, 03-1801, there is a preliminary settlement of over $200 million in cash, plus important non-cash benefits, including the revamping of the system for calculating the reimbursements of claimants.  Mr. Axelrod also has been involved in the prosecution of numerous securities and antitrust actions.

Mr. Axelrod serves as a member of the Class Action Committee of the New York State Bar Association.  He is a member of the Temple University College of Liberal Arts Alumni Board, and serves as a trustee and General Counsel of Temple Beth El in Huntington, New York.

Mr. Axelrod is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and Third Circuits.

## DANIEL L. BERGER

Daniel L. Berger graduated from Haverford College in 1976, and Columbia Law School in 1979 where he was a Stone Scholar.

Mr. Berger joined the Firm as a partner in September 2006.  Previously, Mr. Berger was a senior partner of Bernstein Litowitz Berger & Grossmann, where he litigated complex securities and discrimination class actions for 22 years.  While at that firm, Mr. Berger tried two 10b-5 securities class actions to jury verdicts, among the very few such cases ever tried.  He served as principal lead counsel in many of the largest securities litigations in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Sec. Litig.*, (D. N.J.) ($3.3 Billion); *In re Lucent Technologies, Inc. Sec. Litig.* (D. N.J.) ($675 Million); *In re Bristol-Myers Squibb Sec. Litig.*, (S.D.N.Y.) ($300 Million); *In re Daimler Chrysler A.G. Sec. Litig.*, (D. Del.) ($300 Million); *In re Conseco, Inc. Sec. Litig.*, (S.D. Ind.) ($120 Million); *In re Symbol Technologies Sec. Litig.*, (E.D.N.Y.) ($139 Million); and *In re OM Group Sec. Litig.*, (N.D. Ohio) ($92 Million).  Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott*, 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.*, 919 F.2d 290 (5th Cir. 1990).  Mr. Berger also was lead class counsel in several important discrimination class actions, in particular *Roberts v. Texaco, Inc.* (S.D.N.Y.), where he represented African-American employees of Texaco and achieved the largest settlement ($175 Million) of a race discrimination class action.

Mr. Berger's work has received praise from many federal courts.  For example, in commenting on the settlement achieved in *McCall v. Scott*, one of the most significant recoveries in a derivative action, the United States District Court for the Middle District of Tennessee wrote:

> [The settlement] confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan....Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries.

In addition, Mr. Berger's work as lead trial counsel in *In re ICN/Viratek Sec. Litig.* was noted by the United States District Court for the Southern District of New York, which said:

> "[P]laintiffs' counsel did a superb job here on behalf of the class. . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task. . . The trial work was beautifully done and I believe very efficiently done. . .

Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003 and currently serves on the Board of Managers of Columbia Law School. He served on the Board of inMotion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years, and currently is a member of the Board of Madison Square Park Association.

Mr. Berger is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Third, Fifth, Sixth, Seventh, Ninth and Tenth Circuits.

## MICHAEL M. BUCHMAN

Michael Buchman joined the Firm as a partner in 2007. Mr. Buchman has litigated complex antitrust and consumer protection class actions for over ten years. Mr. Buchman served as an Assistant Attorney General in the Antitrust Bureau of the New York State Attorney General's Office. He has an advanced degree in international antitrust and trade law from Fordham University School of Law.

Mr. Buchman has extensive experience litigating complex commercial matters in federal and state courts. Over the past seven years, he has spearheaded an effort to challenge anticompetitive conduct by pharmaceutical companies designed to artificially inflate the price of brand name prescription drugs. He has served as co-lead counsel in a number of "generic drug" cases, including *In re Buspirone Antitrust Litig.*, MDL 1413 (S.D.N.Y.) ($90m settlement); *In re Relafen Antitrust Litig.*, 01-12222-WGY (D. Mass.) ($75m settlement); and *In re Augmentin Antitrust Litig.*, 02 Civ. 445 (E.D. Va. Norfolk Div.) ($29m settlement). Some of the settlements obtained by Mr. Buchman have resulted in substantial "cy pres" monetary awards for well known charitable organizations. For example, in *Augmentin*, awards exceeding $100,000 were donated on a "cy pres" basis to St. Jude Children's Research Hospital and Children's Rights of New York. Mr. Buchman also has extensive experience in other areas of antitrust law. For example, he was actively involved in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.) ($1.027b) and *In re Visa Check/Mastermoney Antitrust Litigation*, CV 96-5238 (E.D.N.Y.) ($3b), two of the largest antitrust settlements ever reached.

Courts have acknowledged the high quality of Mr. Buchman's litigation efforts. For example, former Chief Judge William G. Young noted in *Relafen*, where Mr. Buchman was a co-

lead, "[t]his proposed settlement is the result of a great deal of very fine lawyering . . ." Similarly, in *Buspar*, where he also was a co-lead, Judge John G. Koeltl stated: "Let me say that the lawyers in this case have done a stupendous job. They really have." His "tenacious and skillful" work as a co-lead was also recognized by Judge Lewis A. Kaplan of the Southern District of New York in an international antitrust class action brought on behalf of foreign purchasers and sellers of works of art sold at auction by Christie's and Sotheby's which resulted in a $40 million settlement.

Mr. Buchman frequently speaks on antitrust and consumer protection class action issues. In 2002, he appeared on the *CBS Evening News* and spoke about generic drug litigations. That same year, he presented at the Practicing Law Institute's 10th Annual Consumer Financial Services Litigation on Recent Developments in State Unfair Deceptive Acts and Practices Statutes and Private Attorney General Litigation. On February 7, 2007, he spoke at the 4th National In-House Counsel Conference on Managing Complex Litigation on class certification. Mr. Buchman has also authored or co-authored articles on procedure or competition law, including a Task Force on Dealer Terminations for The Association of the Bar of the City of New York, Committee on Antitrust and Trade Regulation entitled *Dealer Termination in New York* dated June 1,1998, and *What's in a Name ─ the Diversity Death-Knell for Underwriters of Lloyd's of London and their Names; Humm v. Lombard World Trade, Inc.*, Vol. 4, Issue 10 International Insurance Law Review 314 (1996).

He is admitted in the states of Connecticut and New York, and the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the United States District Courts for the Southern and Eastern Districts of New York and the Districts of Arizona and Connecticut, and the United States Court of International Trade.

12

## PATRICK V. DAHLSTROM

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor-in-Chief of the Administrative Law Journal, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic.

Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge. He joined the Pomerantz Firm as an associate in the Fall of 1991 and became a partner in January 1996. Mr. Dahlstrom is the resident partner in the Pomerantz Firm's Chicago Office. He focuses on securities fraud litigation.

Recently, in *In re Comverse Technology Sec. Litig.*, 2007 U.S. LEXIS 14878 (E.D.N.Y. 2007), Mr. Dahlstrom obtained important clarification regarding the calculation of the "largest financial interest" in connection with of the selection of a lead plaintiff, in a manner consistent with *Dura*, 544 U.S. 336 (2005). In *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), he obtained the first class certification in a federal securities case involving fraud by analysts. Some examples of other notable litigations by Mr. Dahlstrom are *In re Safety-Kleen Stockholders Securities Litigation,* 3:00-736-17 (D. S.C.) (as co-lead counsel, Firm obtained $54.5 million settlement); *In re Livent, Inc. Noteholders Securities Litigation*, 98 Civ. 7161 (VM) (S.D.N.Y.) (Firm, as sole-lead, obtained $17 million settlement, plus $36 million judgment (with interest)); and *In re Woolworth Corporation Securities Class Action Litigation*, 94 Civ. 2217 (RO) (S.D.N.Y.) (Firm, as co-lead counsel, secured a $20 million settlement). Mr. Dahlstrom was also co-class

13

counsel and a member of the trial team in *In re ICN/Viratek Securities Litigation*, 87 Civ. 4296 (KMW) (S.D.N.Y.).

Mr. Dahlstrom is admitted in New York and Illinois, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of Illinois, the Northern District of Indiana, the Eastern District of Wisconsin, the District of Colorado, the Western District of Pennsylvania, the United States Courts of Appeals for the Fourth, Sixth, Seventh and Eight Circuits, and the United States Supreme Court.

## MARC I. GROSS

Marc I. Gross has been associated with the Firm since 1976 and became a partner in 1984. He graduated from New York University Law School in 1976 and received his undergraduate degree from Columbia University in 1973.

Mr. Gross has extensive experience in litigating class (securities, antitrust and consumer) and derivative actions. He is sole or co-lead counsel in many of the Firm's major pending cases, and has won rulings highly favorable to plaintiffs.

Mr. Gross has obtained numerous large recoveries. For example, he was sole Lead Counsel in *In re Charter Communications Inc. Sec. Litig.*, MDL No. 1506 E.D. Mo. (CAS), a case where, as described above, the Court lauded the Firm's efforts in obtaining a $146.25 million settlement. He was also co-lead counsel in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), which resulted in a settlement valued at $100 million for defrauded life insurance policy customers in New York. In approving the settlement, Judge Tormey stated:

> The Court approves the settlement in all respects. It is so
> ordered, and I compliment you all, not only the manner in which you
> arrived at this result today, but the time that you -- in which it was

14

done.  And I think you all did a very, very good job for all the people.
You made attorneys look good.  I thank you very much.  It was nice
working with you all.

Mr. Gross was the attorney in charge of *Texas Int'l Co. Sec. Litig.* (W.D. Okla.), where, in

granting class certification, the Court observed:

> The performance of plaintiffs' counsel thus far leaves the Court with
> no doubt that plaintiffs' claims will be vigorously and satisfactorily
> prosecuted throughout the course of this litigation.

In the course of approving the subsequent settlement of the case, the Court added:

> I would like to compliment all the parties and attorneys in this case.
> . . . You have all worked together better than I think any case I've had
> that involved these extensive issues and parties and potential
> problems.  And I for one appreciate it.  And I think it shows certainly
> a great deal of professionalism on all your part.

Other examples of Mr. Gross' representation as sole or co-lead counsel are:  *In re Elan Corp.*

*Sec. Litig.*, No. 02-CV-865 (RMB)(FM) (S.D.N.Y.) ($75 million settlement); *In re Salomon Analysts*

*AT&T Litig.* ($74.75 million settlement) (S.D.N.Y.); *In re National Health Labs., Inc. Securities*,

CV-92-1949-H (CM) (S.D. Cal. 1995) ($64 million recovery); *In re American Italian Pasta Co. Sec.*

*Litig*, No 05-CV0725-W-ODS (S.D.N.Y.) ($25 mi partial settlement with case ongoing against

auditors); *Mardean Duckworth v. Country Life Insurance Co*, No. 98 CH 01046 (C.D. Ill. 2000)

($45 million settlement); and *Frank v. Paul* (*Centrust Savings Bank Securities Litigation*), 93 Civ.

1453 (TCP) (E.D.N.Y. 1996) (over $20 million recovery).  He was a member of the Plaintiffs'

Executive Committee in *In re Transkaryotic Therapies Sec. Litig.* (03-cv-10165-RWZ) (D. Mass.),

which has settled for $50 million (court approval of settlement has been requested);

Mr. Gross has been a member of the New York City Bar Association's Federal Courts

Committee, an early neutral evaluator for the Eastern District of New York, and a mediator for the

15

Commercial Division of the Supreme Court of the State of New York.  He is currently a Vice President of the Institute of Law and Economic Policy ("ILEP"), a not-for profit organization devoted to promoting academic research and dialogue in securities law issues and litigation.  At the 2006 ILEP Conference, Mr. Gross was a commentator on a panel discussing Sarbanes-Oxley governance issues. He was Treasurer of the National Association of Securities and Commercial Law Trial Attorneys.  He was a guest panelist for a Spring 1998 conference on "Courts on Trial" sponsored by the Institute of Law and Economics and held at the University of Arizona Law School, and is the author of "*Complex Litigation at the Millennium Loser-Pays - or Whose 'Fault' Is It Anyway: A Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It'"*", which appeared in the 64 Law & Contemporary Problems (Duke Law School) (2001).

Mr. Gross has also served as Chairman of Neighbors Helping Neighbors, a not-for-profit housing group based in Brooklyn, New York that is affiliated with the Neighborhood Reinvestment Corporation.

Mr. Gross is admitted in New York, the United States District Courts for the Southern, Northern and Eastern Districts of New York, the Eastern and Western Districts of Missouri, District of Nebraska, District of Arizona, the United States Courts of Appeals for the First, Second, Third and Eighth Circuits, and the United States Supreme Court.

## **STANLEY M. GROSSMAN**

Stanley M. Grossman, the senior partner of the Pomerantz Firm, was featured in the New York Law Journal (August 1, 1983) article:  "*Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants.*"  He has been with the Pomerantz Firm since February 1969, and has been a member of the Firm since 1976.  Throughout this period, he has mainly

represented plaintiffs in securities and antitrust class actions, including many of those listed in the firm biography. *See. e.g., Ross v. Bernhard*, 396 U.S. 531; *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem*, 818 F.2d 1433 (9th Cir.); *In re Salomon Bros. Treasury Litig*, 9 F.3d 230 (2d Cir.).   Recently, he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See Stoneridge Investment Partners v. Scientific-Atlanta*, No. 06-43 (2007).   Other examples of cases where he was the lead or co-lead counsel for plaintiffs and the class include:  *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP)(S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, CV-89-7135 DT (Kx)(C.D. Cal. 1994) ($100 million settlement); *In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 CAL (N.D. Cal. 2000) (over $80 million settlement for the class).

Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of the legal representation provided by Mr. Grossman to investors.  For example, in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 79 Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Mr. Grossman was also the lead trial attorney in *Rauch v. Bilzerian* (Super. Ct. N.J.)(directors owed the same duty of loyalty to preferred shareholders as common shareholders in a

corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Mr. Grossman has lectured to the profession on various occasions under the auspices of the Southern Federal Securities Institute, Columbia University School of Law, Duke University Law School, University of Arizona Law School, Brooklyn Law School, ALI-ABA, PLI, the New York State Bar Association, and the Association of the Bar of the City of New York. Mr. Grossman is the author of "Commentary: The Social Meaning of Shareholder Suits," 65 BROOKLYN LAW REV. (1999), among other articles.

Mr. Grossman has been active in numerous professional organizations. He is the former president of the National Association of Securities Attorneys — an organization of attorneys specializing in securities class action litigation. During his tenure, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission, members of Congress and of the Executive Branch in furnishing input and commentary on legislation which became the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In the summer of 1998, at the invitation of Chairman of the Judiciary Committee Henry Hyde, Mr. Grossman testified before Congress on proposed legislation dealing with "federalization of state class actions." Subsequently, Mr. Grossman was asked to participate with Congressional counsel in drafting proposed legislation.

Mr. Grossman presently serves as a vice president and adviser of ILEP, the public policy research and educational foundation focusing on securities laws. He is also a member of the United States Advisory Board of the Institute for Consumer Antitrust Studies at Loyola University Chicago.

Additionally, he is on the Advisory Committee for the Abraham L. Pomerantz Lectures at Brooklyn Law School.

He is currently a member of the Judiciary Committee of the New York City Bar Association. Previously he served on the Association's Committee on Professional and Judicial Ethics; State Courts of Superior Jurisdiction; and Trade and Antitrust. He is also a member of the Litigation Section dealing with class actions at the American Bar Association.

Mr. Grossman is actively involved in local and national civic affairs. In June, 1999, he was appointed by the New York City Bar Association to chair a special Blue Ribbon Commission on the future of the City University of New York. Upon the publication of the Commission's Report, the President of the Association described it as "insightful, measured and persuasive . . . a striking example of the very best of what this Association can do."

He is a director of the Lincoln Center Institute for the Arts in Education, as well as a member of the Appleseed Foundation, a national public interest advocacy group. In addition, he is a member of the AFL-CIO Center for Working Capital's National Advisory Council of Employee Benefit Professionals.

Mr. Grossman is admitted in New York, the United States District Courts for the Southern, and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

### D. BRIAN HUFFORD

D. Brian Hufford joined the Pomerantz Firm in April 1993 and became a partner in July 1995.  After obtaining a Masters of Urban Affairs from Wichita State University in 1982, Mr. Hufford attended the Yale Law School, where he was Notes and Topics Editor for the *Yale Law and Policy Review* and was awarded the Thomas I. Emerson Prize for the Outstanding Legislative Services Project.  Graduating from Yale in 1985, Mr. Hufford subsequently spent two years in Washington, D.C. as an Honors Attorney in the United States Department of the Treasury's Honors Law Program.  From 1987 until he joined the Firm in 1993, he was a litigation associate at Davis Polk & Wardwell, where he worked primarily on securities and class actions.  His article "*Deterring Fraud vs. Avoiding the Strike Suit:  Reaching An Appropriate Balance*," was published in 61 *Brooklyn Law Rev.* 593 (Summer 1995).

At the Pomerantz Firm, Mr. Hufford has prosecuted not only a number of securities and antitrust cases, but is also the attorney in charge of the Firm's Healthcare and Consumer Group.  Mr. Hufford successfully argued before the New York Appellate Division in *Batas v. Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001), in which the court upheld claims that Prudential relied on improper procedures for the determination of medical necessity in its health insurance contracts. Mr. Hufford also successfully argued *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997), in which the court upheld the charge that the defendant breached fiduciary duties under ERISA by misrepresenting the financial incentives it paid to physicians to reduce medical expenditures.  In addition, Mr. Hufford received a successful decision upholding claims against United Healthcare in *American Medical Association v. United Healthcare Corp.*, 2002 U.S. Dist. LEXIS 20309 (S.D.N.Y. Oct. 23, 2002), where plaintiffs claimed that the defendant relied on an improper database for

20

determining "usual, customary and reasonable" fees for the purpose of reimbursing subscribers for services received from out-of-network health care providers.  Moreover, Mr. Hufford was the Pomerantz partner in charge *Addison v. HealthNet*, where a preliminary settlement of over $200 million, plus important non-cash was reached.  If approved by the court, this will be one of the largest settlements ever in a health insurance litigation. Mr. Hufford was also the partner-in-charge in Addison *v. American Medical Security*, Case No. CA 001455-AB (Cir. Ct., Palm Beach Cty., Fla.), in which plaintiffs won a two-week bench trial, with the Court finding in March 2002 that the defendant had violated Florida law by, among other things, improperly raising health care premiums based on an individual's health history.

Mr. Hufford has written and lectured in the area of healthcare litigation.  Further, he was featured in the book *Net Law:  How Lawyers Use the Internet*, by Paul Jacobsen (Jan. 1997), which discusses how he has used the Internet to investigate some of the firm's pending class actions.

Mr. Hufford is admitted in New York and Ohio, and the United States District Courts of the Southern and Eastern Districts of New York.

## CHERYL HAMER MACKELL

Cheryl Hamer Mackell joined the Firm in February 2003 to head up its Washington, D.C. office and became a partner in January 2007.  She is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University.  Ms. Mackell is part of the litigation team in *In re Symbol Technologies, Inc. Sec. Litig.*, (E.D.N.Y. filed Aug. 16, 2005) and *In re American Italian Pasta Co. Sec. Litig.*, (W.D. Mo. Filed Aug. 12, 2005).

21

Before joining Pomerantz, Ms. Mackell served as of counsel to nationally known securities class action law firms focusing on plaintiff securities fraud litigation.  In private practice for over 20 years, she has litigated, at both the state and federal levels, RICO, Continuing Criminal Enterprise, death penalty and civil rights cases.  She has authored numerous criminal writs and appeals.

She was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration, where she taught Non-Profit Corporate Law, from 1996 to 1998.  She is a member of the American Bar Association's Litigation and Individual Rights Sections, the Corporate, Finance & Securities Law Section of the District of Columbia Bar.

Ms. Mackell is admitted in California, United States District Court for the Northern, Southern, Eastern and Central Districts of California,  the District of New Mexico, the District of Columbia, the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Tenth and Eleventh Circuits, and the United States Supreme Court.

## H. ADAM PRUSSIN

H. Adam Prussin joined the Firm as of counsel in June 2000, and became a partner in January 2002.  He graduated *cum laude* from Yale College in 1969, and after obtaining a Masters Degree from the University of Michigan in 1971, he received his J.D. from Harvard Law School in 1974.

In addition to securities litigation, Mr. Prussin has extensive experience in derivative actions. He has published several articles on the subject of the standards and procedures for obtaining dismissal of shareholder derivative actions, including "*Termination of Derivative Suits Against Directors on Business Judgement Grounds:  From Zapata to Aronson,*" 39 The Business Lawyer

22

1503, 1984; "*Dismissal of Derivative Actions Under the Business Judgement Rule:  Zapata One Year Later*," 38 The Business Lawyer 401, 1983; and "*The Business Judgement Rule and Shareholder Derivative Actions:  Viva Zapata*?," 37 The Business Lawyer 27, 1981.

Mr. Prussin was special litigation counsel in *Summit Metals, Inc. v. Gray*, a derivative action which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff.  He was also one of the lead lawyers in *In re Livent Noteholders Securities Litigation*.  Mr. Prussin is co-lead counsel in several of the Firm's pending derivative actions.

Before joining the Firm, Mr. Prussin was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders.  Mr. Prussin played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

Before joining Silverman, Harnes in 1994, Mr. Prussin was of counsel to Weil, Gotshal & Manges.  While there, he represented numerous corporate defendants in shareholder derivative actions and class actions, and also in general commercial, bankruptcy and antitrust disputes.

Mr. Prussin is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Ninth and D.C. Circuits.

### J. DOUGLAS RICHARDS

J. Douglas Richards joined Pomerantz in March 2007 as a partner specializing in antitrust class actions. He served for more than two years as Deputy General Counsel of the Commodity Futures Trading Commission, where he supervised numerous attorneys in the Office of General Counsel and managed more than 35 appeals in the United States Courts of Appeals. Mr. Richards was responsible for the management of all litigation by and against that federal agency, and was the recipient of a Special Act or Service Award. Prior to that time, he was a litigation partner for more than eight years with O'Sullivan Graev & Karabell (which merged into O'Melveny & Myers in 2002 and became its New York office). While with O'Sullivan he participated in diverse commercial litigation including antitrust cases such as *In re Beer Industry Antitrust Litigation*, 86 CV 2400 (E.D.N.Y.), in which he was a lead trial counsel for defendant the Stroh Brewery Company and successfully obtained a directed verdict for it after a two-week jury trial. Mr. Richards has broad experience with the litigation of antitrust and trade regulation matters at the trial and appellate levels.

Mr. Richards has especially extensive experience in the successful prosecution of antitrust class actions. He was co-lead counsel for the plaintiffs in a class action against Microsoft in New York state court, which resulted in a settlement providing benefits of more than $160 million for New York consumers and needy public schools. He was co-lead counsel in *In re Buspirone Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.), which led to a $90 million settlement and in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job." He was co-lead counsel in *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.), which led to a $75 million settlement and in which presiding Judge Young stated that the settlement was "the result of a great

24

deal of very fine lawyering." He was co-lead counsel for international customers of Christie's and Sotheby's in connection with class action claims against them for price-fixing, in connection with which presiding Judge Kaplan observed that the representation of the plaintiffs had been "tenacious and skillful," and in which a $40 million settlement was achieved for foreign auction house customers. He also made a substantial contribution to the record-setting recovery of more than $3 billion in the antitrust class action against Visa and MasterCard in *In re Visa Check/Mastermoney Antitrust Litig.*, CV-96-5238 (E.D.N.Y.), which is the largest antitrust settlement in the over 100 year history of the Sherman Act.

Mr. Richards has argued more than twenty-five appeals in the federal and state courts of appeals. In recent years, he has argued appeals on several cutting-edge issues of antitrust law, including to the Supreme Court in *Bell Atlantic Corp. v. Twombly*, No. 05-1126, a case governing pleading requirements for antitrust conspiracy cases. He participated in 2007 in the briefing to the Supreme Court in *Credit Suisse v. Billing*, No. 05-1157, a case concerning the scope of operation of antitrust law in regulated industries. He also has argued such leading appellate cases as *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005), *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), and *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002).

Mr. Richards also has been a frequent speaker on issues of antitrust law. On Nov. 9, 2006, he was a speaker along with United States District Judge Todd Rakoff, former FTC Commissioner Tom Leary and David Copeland of Kaye Scholer at Federal Bar Council presentation in the Southern District of New York courthouse, titled "Antitrust Issues in Patent Litigation Settlements: the Divergent Views of Federal Courts and Agencies." On June 21, 2005, he was a speaker, along with United States District Judge Thomas Penfield Jackson, Professor Eleanor Fox of NYU Law

School and Commissioner Jon Leibowitz of the FTC, at the annual symposium of the American Antitrust Institute titled "Thinking Creatively About Antitrust Remedies." He also recently authored *What Makes An Antitrust Class Action Remedy Successful?: A Tale of Two Settlements*, 80 Tulane L. Rev. 621 (2005).

Mr. Richards is admitted in New York, as well as the United States District Court for the Northern, Eastern, Southern and Western Districts of New York, the District of Connecticut, all of the Circuits of the United States Courts of Appeals, and the United States Supreme Court.

### SHAHEEN RUSHD

Shaheen Rushd graduated *summa cum laude* from New York Law School in 1981 and obtained her undergraduate degree from Kalamazoo College in 1977 (*magna cum laude*; elected to Phi Beta Kappa).

Ms. Rushd joined the Firm as an associate in January 1983 and became a partner in July 1991. Previously, Ms. Rushd was a staff attorney at the New York Regional Office of the Federal Trade Commission and served as law clerk to the Honorable Leonard I. Garth, Circuit Court Judge of the United States Court of Appeals for the Third Circuit.

Ms. Rushd specializes in securities and antitrust class actions. She has participated in the litigation of many of the Firm's major cases, including *Stoneridge Investment Partners v. Scientific-Atlanta, Inc.; EBC I, Inc. v. Goldman Sachs & Co.; Comverse Technology, Inc. Sec. Litig ; Kronfeld v. TWA*; and *In re Safety-Kleen Corp. Stockholders Litigation*. She was also part of the successful trial teams in *Walsh v. Northrop Grumman, et al.*, CV-94-5105 (E.D.N.Y.) and *Rauch v. Bilzerian*, 88 Civ. 15624 (Super. Ct. N.J.).

Ms. Rushd was a trustee of Kalamazoo College from 1996 through June 2002.  She has served as an Adjunct Instructor at New York Law School and was a member of the New York City Bar Association's Antitrust and Trade Regulation Committee.

Ms. Rushd is admitted in New York, the United States District Court for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Eighth and Eleventh Circuits, and the United States Supreme Court.

### MURIELLE STEVEN WALSH

Murielle Steven Walsh joined the Firm as an associate in April 1998 and became partner in January 2007.  Ms. Steven Walsh graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship.  During law school, Ms. Steven Walsh interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

At Pomerantz, Ms. Steven Walsh specializes in securities and corporate governance-related litigation.  Ms. Steven Walsh was part of the trial team in *Lewis v. Beall*, a derivative action in California state court that focused on the duties of corporate directors.  More recently, in *In re Livent Noteholders' Securities Litigation*, Ms. Steven Walsh was one of the lead attorneys in prosecuting this securities class action against the company's former chief executive officers, and obtained a $36.6 million judgment against these individuals (which was recently affirmed by the Second Circuit).  The Pomerantz Firm also obtained settlements totaling over $17 million from other defendants in the case.

Ms. Steven Walsh is also part of the team working on the *EBC I v. Goldman Sachs* case, in which the Pomerantz firm obtained a landmark ruling from the New York Court of Appeals - that underwriters owe certain fiduciary duties to their issuer clients.

Ms. Steven Walsh currently serves as a member of the editorial board for Class Action Reports. In the past, she has been involved in political asylum work with the Association of the Bar of the City of New York.

Ms. Steven Walsh is admitted in New York and in the United States District Courts for the Eastern and Southern Districts of New York.

## JOSHUA B. SILVERMAN

Joshua B. Silverman joined the Pomerantz Firm in April 2006, as Of Counsel. Mr. Silverman is a 1993 graduate of the University of Michigan, where he received *Phi Beta Kappa* honors, and a 1996 graduate of the University of Michigan Law School. He focuses on prosecution of securities fraud class action lawsuits. He was a key member of the Pomerantz team of lawyers in *Stoneridge Investment Partners v. Scientific-Atlanta, Inc.*

Before joining the Pomerantz Firm, Mr. Silverman was a litigation associate at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies. His practice there focused on complex commercial litigation including class action commodities fraud, civil RICO and antitrust cases. Mr. Silverman also spent two years as a securities trader.

Mr. Silverman is admitted in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeals for the Seventh and Eighth Circuits, and the United States Supreme Court.

28

## LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar became Of Counsel to the Firm in 2008.  She has been associated with the Firm since January 2002.

Ms. Handelman Smollar graduated from Chicago-Kent College of Law in 1996.  Upon her graduation, she spent the next 5 years specializing in complex litigation, handling a broad variety of matters.

Ms. Handelman Smollar co-authored an article for the Illinois Institute for Continuing Legal Education (IICLE) entitled "Shareholder Derivative Suits and Stockholder Litigation in Illinois," published in IICLE Chancery and Special Remedies 2004 Practice Handbook.

Ms. Handelman Smollar is admitted in Illinois, the United States District Court for the Northern District of Illinois, Eastern District of Missouri, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## JASON S. COWART

Jason S. Cowart became associated with the Firm in February 2005.  He focuses on the prosecution of securities fraud class actions.  Mr. Cowart graduated *cum laude* from Northwestern University Law School in 1999.  While in law school, he won the Moot Court competition and was an editor of the Journal of International Law and Business.

After law school, Mr. Cowart served as a law clerk to United States District Court Judge Richard Enslen.  Before joining the Pomerantz Firm, Mr. Cowart was a litigation associate at Sidley Austin Brown & Wood LLP for over four years.  During that time, Mr. Cowart concentrated his practice on complex commercial litigation including antitrust, contract, fraud, and health care-related matters.

Mr. Cowart is the co-author of *State Immunity, Political Accountability and Alden v. Maine*, 75 Notre Dame L. Rev. 1069 (2000).

Mr. Cowart is admitted in New York and Washington, D.C., the United States District Court for the Southern and Eastern Districts of New York, the Western District of Michigan, the District of Columbia, and the United States Supreme Court.

## R. JAMES HODGSON

Jim Hodgson became associated with the Firm in May 2007. He focuses on the prosecution of securities fraud class actions.

Mr. Hodgson graduated from the University of Pennsylvania Law School in 2003. While in law school, he served as a judicial intern to the Honorable John F. Keenan, United States District Judge, Southern District of New York. He also served as a Senior Editor of the University of Pennsylvania Law Review and, upon graduation, was recognized with an award for "Exemplary Public Service while at Penn Law School."

Following law school, Mr. Hodgson was associated with the law firm of Fried, Frank, Harris, Shriver & Jacobson LLP for nearly four years. At Fried, Frank, Mr. Hodgson focused his practice on general commercial and securities litigation, regulatory defense, copyright enforcement, and white-collar criminal defense. In addition, he has tried (on a pro bono basis) numerous asylum law cases on behalf of refugees seeking asylum protection in the United States.

Mr. Hodgson is admitted in New York. He is a member of American Bar Association, New York State Bar Association, and Association of the Bar of the City of New York.

30

## JEREMY A. LIEBERMAN

Jeremy A. Lieberman became associated with the Firm in August 2004. He focuses on the prosecution of securities fraud class actions. Mr. Lieberman graduated from Fordham University School of Law in 2002. While in law school, Mr. Lieberman served as a staff member of the Fordham Urban Law Journal.

Upon graduation, Mr. Lieberman was a litigation associate at Chadbourne & Parke LLP, where he specialized in complex commercial litigation and products liability.

Mr. Lieberman is admitted in New York. He is a member of the New York State Bar Association.

## FEI-LU QIAN

Fei-Lu Qian became associated with the Firm in July 2005. He focuses on the prosecution of securities fraud class actions. Mr. Qian graduated from Albany Law School of Union University in 2003. He was Associate Editor of the Albany Law Review. While in law school, he interned at the New York State Office of the Attorney General.

Mr. Qian began his legal career as an associate at Lovell Stewart Halebian LLP, where he specialized in securities litigation.

Mr. Qian is admitted in New York and the United States District Courts for the Southern and Eastern Districts of New York.

31

## CAROL A. STRAW

Carol A. Straw became associated with the Firm in 2007. She focuses on securities fraud class and derivative actions. Ms. Straw is a 1991 graduate of Columbia University School of Law and received her undergraduate degree from Queens College, *cum laude*, with honors in Economics.

Before law school, Ms. Straw interned with the NYC Public Development Corporation under the Mayor's Urban Fellows Program. After law school, she had her own private practice for many years.

Ms. Straw has represented indigent clients in divorce and child support proceedings as a participant in the Brooklyn Volunteer Lawyers Association.

Ms. Straw is admitted in New York and the District of Columbia.

## TAMAR A. WEINRIB

Tamar A. Weinrib joined Pomerantz as an associate in April 2008. Ms. Weinrib graduated from Fordham University School of Law in 2004 and, while there, participated in and coached Moot Court competitions.

After law school, Ms. Weinrib worked as a litigation associate in the New York office of Clifford Chance US LLP for over three years, where she focused on complex commercial litigation. In addition, she was involved in pro bono cases, including a criminal appeal and a housing dispute filed with the Human Rights Commission.

Ms. Weinrib is admitted in New York and the United States District Court for the Southern District of New York.

## SUSAN J. WEISWASSER

Susan J. Weiswasser became associated with the Firm in December 2004. She focuses on health insurance and other class action insurance litigation..

Ms. Weiswasser graduated from Brooklyn Law School in 2000. While in law school, Ms. Weiswasser served as a law clerk intern to the Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York. Ms. Weiswasser also served as a legal intern with the New York State Capital Defender Office.

Ms. Weiswasser is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Third Circuit. She is a member of the New York City Bar Association.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | | |
|---|---|---|
| CHARLES LINTZ, Individually And On Behalf of All Others Similarly, Situated | ) ) ) | |
| | ) | Case No. 1:08-CV-03536-WHP |
|        Plaintiff, | ) ) | |
|    v. | ) ) | |
| AGRIA CORPORATION, GUANGLIN LAI, KENNETH HUA HUANG, GARY KIM TING YEUNG, ZHAOHUA QIAN, ZHIXIN XUE, GEOFFREY DUYK, JASMINE MARRERO, CREDIT SUISSE SECURITIES (USA) LLC, HSBC SECURITIES (USA) INC., PIPER JAFFRAY & CO., CIBC WORLD MARKETS CORP., and BROTHERS CAPITAL LIMITED, | ) ) ) ) ) ) ) ) ) ) ) ) | |
|        Defendants. | ) ) | |

_____

| | | |
|---|---|---|
| JOSEPH R. LEBLANC, Individually And On Behalf of All Others Similarly, Situated | ) ) ) | |
| | ) | Case No. 1:08-CV-03886-WHP |
|        Plaintiff, | ) ) | |
|    v. | ) ) | |
| AGRIA CORPORATION, GUANGLIN LAI, KENNETH HUA HUANG, GARY KIM TING YEUNG, ZHAOHUA QIAN, ZHIXIN XUE, GEOFFREY DUYK, and BROTHERS CAPITAL LIMITED, | ) ) ) ) ) ) | |
|        Defendants. | ) ) | |

_____

```
_____
SANDY LODERMIER, Individually      )
And On Behalf of All Others Similarly, )
Situated                           )      Case No. 1:08-CV-04456-WHP
            Plaintiff,             )
                                   )
     v.                            )
                                   )
AGRIA CORPORATION, GUANGLIN        )
LAI, KENNETH HUA HUANG, GARY       )
KIM TING YEUNG, ZHAOHUA QIAN,      )
ZHIXIN XUE, GEOFFREY DUYK,         )
TERRY MCCARTHY. JASMINE            )
MARRERO, CREDIT SUISSE             )
SECURITIES (USA) LLC, HSBC         )
SECURITIES (USA) INC., PIPER       )
JAFFRAY & CO., CIBC WORLD          )
MARKETS CORP., and BROTHERS        )
CAPITAL LIMITED,                   )
                                   )
            Defendants.            )
_____)
```

### [PROPOSED] ORDER CONSOLIDATING RELATED CLASS ACTION COMPLAINTS, APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL

**WHEREAS,** the Court has considered the competing motions for Consolidation, Appointment of Lead Plaintiff and Approval of Lead Counsel,

**IT IS HEREBY ORDERED THAT:**

1.    The Court hereby consolidates the actions captioned above for all purposes including, but not limited to, discovery, pretrial proceedings and trial proceedings, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure under the following caption:

```
--------------------------------------------------x
IN RE AGRIA CORPORATION                 Master File No. 08 Civ. 3536 (WHP)
SECURITIES LITIGATION
--------------------------------------------------x
```

2.      A Master Docket and Master File are hereby established for this Action. The Master File shall be Civil Action No. 08 Civ. 3536 (WHP). Entries in the Master Docket shall be applicable to this Action and any subsequently filed actions related hereto, as more fully set forth below.

3.      When a case that arises out of the subject matter of this action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

        a.      file a copy of this Order in the separate file for such action;

        b.      mail a copy of this Order to the attorneys for the plaintiff(s) in the newly filed or transferred case and to any new defendant(s) in the newly filed or transferred case; and

        c.      make the appropriate entry in the docket for this action.

4.      Each new case which arises out of the subject matter of this Action that is filed in this Court or transferred to this Court shall be consolidated with this action and this Order shall apply thereto, unless a party objecting to this Order or any provision of this Order shall, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, file an application for relief from this Order or any provision herein and this Court deems it appropriate to grant such application.

5.      During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody or control, including computer-generated and stored information and materials such as computerized data and electronic mail, containing information that is relevant to or which may lead to the discovery of information relevant to the subject matter of the pending litigation.

APPOINTMENT OF LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF LEAD COUNSEL

6.      Having reviewed all pending Motions and accompanying Memoranda of

Law, the Court hereby appoints Senquan Gao as Lead Plaintiff.  Lead Plaintiff satisfies

the requirements for Lead Plaintiff pursuant to Section 27(a)(3)(B)(iii) of the PSLRA.

7.      Lead Plaintiff, pursuant to Section 27(a)(3)(B)(v) of the PSLRA, has

selected and retained the law firm of Pomerantz Haudek Block Grossman & Gross LLP

to serve as its Lead Counsel in this consolidated action.

8.      Plaintiff's Lead Counsel shall have the following responsibilities and

duties, to be carried out either personally or through counsel whom Lead Counsel shall

designate:

        (a)      to coordinate the briefing and argument of motions;

        (b)      to coordinate the conduct of discovery proceedings;

        (c)      to coordinate the examination of witnesses in depositions;

        (d)      to coordinate the selection of counsel to act as a spokesperson at
             pretrial conferences;

        (e)      to call meetings of the plaintiff's counsel as they deem necessary
             and appropriate from time to time;

        (f)      to coordinate all settlements negotiations with counsel for
             defendants;

        (g)      to coordinate and direct the pretrial discovery proceedings and the
             preparation for trial and the trial of this matter and to delegate
             work responsibilities to selected counsel as may be required; and

        (h)      to supervise any other matters concerning the prosecution,
             resolution or settlement of the Consolidated Action.

9.      No motion, request for discovery, or other pretrial proceedings shall be

initiated or filed by any plaintiff without the approval of Lead Counsel, so as to prevent

duplicative pleadings or discovery by plaintiffs. No settlement negotiations shall be conducted without the approval of Lead Counsel.

10.    Counsel in any related action that is consolidated with the Consolidated Action shall be bound by this organization of plaintiffs' counsel.

11.    Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices.

12.    Lead Counsel shall be the contact between plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

13.    Defendants shall effect service of papers on plaintiffs by serving a copy of same on Lead Counsel by overnight mail service, electronic or hand delivery. Plaintiffs shall effect service of papers on defendants by serving a copy of same on defendants' counsel by overnight mail service, electronic or hand delivery.

14.    During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-generated and stored information, and materials such as computerized data and electronic mail, containing information which is relevant to the subject matter of the pending litigation.

SO ORDERED.

Dated: _____, 2008

New York, New York

_____
Honorable William H. Pauley III
United States District Judge
Southern District of New York