UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— x

In re AGRIA CORPORATION SECURITIES
LITIGATION

—————————————————————————

This Document Relates To:

    ALL ACTIONS.

————————————————————————— x

: Civil Action No. 1:08-cv-03536-WHP
:
: CLASS ACTION
:
:
: DECLARATION OF DAVID A. ROSENFELD
: IN SUPPORT OF MOTION FOR FINAL
: APPROVAL OF SETTLEMENT AND PLAN
: OF DISTRIBUTION OF SETTLEMENT
: PROCEEDS, AND AN AWARD OF
  ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..................................................................2

II. SUMMARY OF LEAD PLAINTIFF'S ALLEGATIONS ..................................3

III. LEAD PLAINTIFF'S PROSECUTION OF THE CASE ..................................4

IV. PRELIMINARY APPROVAL OF THE SETTLEMENT AND MAILING AND PUBLICATION OF NOTICE OF SETTLEMENT ...........................................7

V. FACTORS TO BE CONSIDERED IN SUPPORT OF SETTLEMENT ...........................8

VI. FACTORS TO BE CONSIDERED IN SUPPORT OF THE REQUESTED ATTORNEYS' FEE AWARD .................................................................9

    A.  Extent of Litigation .................................................................11

    B.  The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk, Contingent Securities Cases ...........................12

    C.  Standing and Expertise of Plaintiff's Counsel ....................................16

    D.  Standing and Caliber of Opposition Counsel ......................................16

VII. CONCLUSION .................................................................................16

DAVID A. ROSENFELD declares:

1.      I am a member of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel"),[1] the Court-appointed lead counsel for the Class in this action. Based upon my active participation in the prosecution and settlement of this action, I have personal knowledge of the matters set forth herein.

2.      I respectfully submit this declaration in support of lead plaintiff Nijat Tonyaz's ("Lead Plaintiff") application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for:  (a) final approval of settlement of this action; (b) final approval of the Plan of Distribution of settlement proceeds; and (c) an award of attorneys' fees and expenses.

3.      The Stipulation of Settlement dated August 6, 2010 ("Stipulation") provides for the payment of $3,750,000 in cash.  The settlement resolves all claims asserted by Lead Plaintiff and the Class in this action against defendants Agria Corporation ("Agria" or the "Company"), Terry McCarthy ("McCarthy"), Geoffrey Duyk ("Duyk"), Jiuran Zhao, Shangzhong Xu, Guanglin Lai, Kenneth Hua Huang, Gary Tim Ting Yeung, Zhaohua Qian, Zhixin Xue ("Xue"), Brothers Capital Limited, Credit Suisse Securities (USA) LLC, HSBC Securities (USA) Inc., Piper Jaffray & Co., and CIBC World Markets Corp. (collectively, "Defendants").

4.      This declaration sets forth the nature of the claims asserted, the principal proceedings to date, the legal services provided by Plaintiff's Counsel, the settlement negotiations, and also demonstrates why the settlement and Plan of Distribution are fair and in the best interests of the

---

[1]      On March 22, 2010, Lead Plaintiff filed a Notice of Firm Name Change stating that Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") had changed its name to Robbins Geller Rudman & Dowd LLP.

- 1 -

Class, and why the application for attorneys' fees and expenses is reasonable and should be approved by the Court.

## I.    PRELIMINARY STATEMENT

5.    This case was carefully investigated and vigorously litigated since its commencement. Plaintiff's Counsel thoroughly reviewed and analyzed all publicly available information regarding Agria, including, but not limited to, its Securities and Exchange Commission ("SEC") filings, financial statements, press releases, and a number of analysts' reports and notes rendered by securities firms. Plaintiff's Counsel also reviewed media reports about Agria, as well as thousands of pages of documents produced by Defendants.

6.    Plaintiff's Counsel also consulted with experts in damages and loss causation, thoroughly researched the law pertinent to the claims and defenses asserted, and engaged in ongoing communications with the Court-appointed Lead Plaintiff.

7.    During settlement negotiations, Lead Counsel made it very clear that, while Lead Plaintiff was prepared to assess the strengths and weaknesses of this case, Lead Plaintiff would continue to litigate rather than settle for less than fair value.

8.    In sum, this settlement is the product of extensive investigation, and aggressive litigation and negotiation, and takes into account the risks specific to this case. It was negotiated on both sides by experienced counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses. The settlement confers an immediate and substantial benefit on the Class and eliminates the risk of continued litigation, especially considering the procedural posture of the case. Lead Counsel respectfully submit that under these circumstances the settlement is in the best interest of the Class and should be approved as fair, reasonable, and adequate. The Court should also approve the Plan of Distribution of settlement proceeds and award attorneys' fees

- 2 -

591346_1

in the amount of 25% of the Settlement Fund, or $937,500, plus expenses of $43,506.31, for Plaintiff's Counsel's efforts in creating this substantial benefit for the Class.

## II.   SUMMARY OF LEAD PLAINTIFF'S ALLEGATIONS

9.     This action was brought by Lead Plaintiff, on behalf of himself and all persons who purchased the American Depository Shares ("ADS") of Agria pursuant and/or traceable to the Company's initial public offering on or about November 6, 2007 through June 26, 2008, inclusive (the "IPO" or the "Offering").  Lead Plaintiff alleged violations of §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "1933 Act").

10.     Defendant Agria is a holding company which, through its subsidiaries, engages in the research and development, production, and sale of agricultural products in the People's Republic of China ("PRC").   Agria sells corn seeds, sheep breeding products, and seedling products. Substantially all of Agria's operations are conducted through contractual arrangements Agria maintains with its consolidated affiliate, Primalights III Agriculture Development Co., Ltd. ("P3A"), and Aero-Biotech Science & Technology Co., Ltd. ("Agria China"), a subsidiary company wholly-owned and controlled by Agria and certain of its officers and directors.  The Company's operations are conducted mostly, if not entirely, through P3A, pursuant to contractual arrangements between the companies.

11.     As alleged in the [Proposed] Second Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Proposed Second Complaint"),[2] Agria negligently

---

[2]     The Proposed Second Complaint was attached as Exhibit 2 to the Memorandum of Law in Support of Plaintiff's Motion for Reconsideration of the Court's Memorandum and Order, dated November 30, 2009, or, in the Alternative, for Leave to File the Proposed Second Consolidated Amended Class Action Complaint, filed on December 14, 2009.

prepared a Registration Statement and Prospectus in November 2007 in connection with the sale of

Agria ADS.  Specifically, the Second Complaint alleged that the Registration Statement failed to

disclose that, at the time of the IPO, Xue – Agria's Chief Operating Officer and a critical member of

the Company's management team – was negotiating for additional compensation and threatening to

resign from Agria.  Lead Plaintiff alleged that although Defendants had a duty to disclose this

information in Agria's Registration Statement, the disclosures and warnings included in the

Registration Statement were inadequate, failing to fully inform investors of the facts existing within

the Company at the time of the IPO.

12.     On April 7, 2008, after the close of the market, Agria issued a press release

announcing that Xue resigned from his position as Chief Operating Officer of Agria.  In that same

press release, Agria disclosed that it was retracting its earnings guidance for the fourth quarter of

2007 and all of 2008.  In response to the announcement, Agria's ADS price fell from $8.80 to $5.46

each.

## III.    LEAD PLAINTIFF'S PROSECUTION OF THE CASE

13.     On April 11, 2008, a class action complaint was filed in the United States District

Court for the Southern District of New York (the "Court"), seeking to recover damages caused by

Defendants' alleged violations of the federal securities laws and to pursue remedies under the 1933

Act.

14.     In accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"),

notice of the pendency of the action was published and two motions were subsequently filed, each

seeking appointment of the respective movants as lead plaintiff and approval of their selection of

counsel as lead counsel.  Following briefing, the Court entered an Order on December 3, 2008,

- 4 -

appointing Nijat Tonyaz as lead plaintiff and approving of his selection of Coughlin Stoia (n/k/a Robbins Geller) as lead counsel.

15.     On February 3, 2009, Lead Plaintiff filed his Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("Consolidated Complaint") against defendants Agria; and Guanglin Lai ("Lai"), Kenneth Hua Huang, Gary Kim Ting Yeung, Zhaohua Qian, Xue, Duyk, Shangzhong Xu, Jiuran Zhao, and McCarthy (collectively, the "Individual Defendants"); Brothers Capital Limited; and Credit Suisse Securities (USA) LLC, HSBC Securities (USA) Inc., Piper Jaffray & Co., and CIBC World Markets Corp. (collectively, the "Underwriter Defendants").

16.     On March 20, 2009, Agria and the Underwriter Defendants filed a motion to dismiss the Consolidated Complaint filed by Lead Plaintiff, arguing that the Consolidated Complaint failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  On April 29, 2009, Lead Plaintiff filed a memorandum in opposition to the motion to dismiss.  On May 13, 2009, Agria and the Underwriter Defendants filed a reply memorandum in further support of their motion to dismiss.  On July 10, 2009, the Court heard oral argument on the motion to dismiss.

17.     By Memorandum and Order dated November 30, 2009, the Court granted the motion to dismiss filed by Agria and the Underwriter Defendants, finding that Lead Plaintiff had failed to allege that defendants had a duty to disclose the omitted information from the Registration Statement.

18.     On December 1, 2009, the Court issued an Order setting a conference for December 18, 2009, to discuss the Individual Defendants and BCL's proposed motion to dismiss.

19.     On December 14, 2009, Lead Plaintiff filed a motion seeking reconsideration of the Court's Memorandum and Opinion dismissing the Consolidated Complaint.  Specifically, Lead

- 5 -

Plaintiff sought leave of Court to file a proposed second amended complaint which, in Lead Plaintiff's view, identified defendants' duty to disclose and thereby cured the defect identified by the Court. A copy of the Proposed Second Complaint was attached to Lead Plaintiff's motion.

20. At the conference on December 18, 2009, Lead Counsel requested an opportunity to file an amended complaint against the Individual Defendants and BCL as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1),[3] since the Individual Defendants and BCL had not yet served a responsive pleading. The Court agreed and, by Order dated December 21, 2009, set forth a schedule for: (i) the filing of an amended complaint against the Individual Defendants and BCL; (ii) the briefing on a motion to dismiss that amended complaint; (iii) the balance of the briefing on Lead Plaintiff's motion for reconsideration of the Order dismissing the claims against Agria and the Underwriter Defendants; and (iv) a date for oral argument on all pending motions.

21. On December 28, 2009, Lead Plaintiff filed his Second Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("Second Amended Complaint") against the Individual Defendants and BCL, and included allegations concerning the duty to disclose that were also included in the Proposed Second Complaint against Agria and the Underwriter Defendants.

22. On December 28, 2009, Agria and the Underwriter Defendants filed a memorandum in opposition to Lead Plaintiff's motion for reconsideration.

23. On February 11, 2010, Duyk and McCarthy filed a motion to dismiss the Second Amended Complaint filed against them. On March 4, 2010, Lead Plaintiff filed his opposition to the motion and Duyk and McCarthy filed their reply on March 15, 2010.

---

[3]    This rule has since been amended.

24.     Following extensive negotiations among counsel, on May 24, 2010, Lead Counsel advised the Court that an agreement-in-principle had been reached to settle the action and requested that the Court adjourn the oral argument that had been scheduled.

## IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT AND MAILING AND PUBLICATION OF NOTICE OF SETTLEMENT

25.     Immediately following the agreement-in-principle to settle the litigation, and following confirmatory discovery (which consisted of document review and a telephonic interview of defendant Lai, the Company's Chairman and former CEO), the parties engaged in extensive negotiations concerning the terms of the Stipulation.

26.     On August 9, 2010, Lead Plaintiff filed his motion for preliminary approval of the settlement.  In connection therewith, Lead Plaintiff requested that the Court approve the manner and forms of notice, which, among other things, described the terms of the settlement, advised Class Members of their rights, set forth the proposed Plan of Distribution of settlement proceeds, informed Class Members of the maximum amount of attorneys' fees and expenses that Lead Counsel would request, and explained the procedure for filing Proof of Claim forms.

27.     In addition, Lead Plaintiff requested that the Court certify the Class for settlement purposes.

28.     By order dated September 20, 2010, the Court preliminarily approved the terms of the settlement and directed that Lead Counsel cause the mailing of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release form (the "Proof of Claim") to all potential Class Members identifiable with reasonable effort (the "Notice Order").

29.     The Court's Notice Order also directed Lead Counsel to cause the Summary Notice for publication (the "Summary Notice") to be published in *Investor's Business Daily* and over *PR Newswire*.

- 7 -

591346_1

30.     Submitted herewith is the Declaration of Carole K. Sylvester of Gilardi & Co. LLC, the Claims Administrator, which attests that Notices have been mailed to over 19,000 potential Class Members and that the Summary Notice was published on October 19, 2010, as directed by the Court.

31.     The Notice informed Class Members of the terms of the settlement, the Plan of Distribution of the settlement proceeds, and that Lead Counsel would apply for an award of attorneys' fees of 25% of the Settlement Fund, or $937,500, and expenses not to exceed $75,000.

32.     The Notice also provided that any objections to the settlement, the Plan of Distribution of settlement proceeds or the application for attorneys' fees and expenses had to be filed by January 7, 2011. As of the date of this Declaration, to my knowledge, no objections have been filed by any member of the Class to the settlement, the Plan of Distribution of settlement proceeds, or to the request for attorneys' fees and expenses.

## V.     FACTORS TO BE CONSIDERED IN SUPPORT OF SETTLEMENT

33.     As set forth above, the terms of the settlement were negotiated by the parties at arm's length through adversarial but good faith negotiations. The settlement was the product of numerous discussions occurring over several months among Lead Counsel, Defendants' counsel, and counsel for Defendants' insurer. Throughout the course of those negotiations, all parties were represented by counsel with extensive experience in securities litigation in general and securities class actions in particular. The settlement was the result of an adversarial process designed to produce a fair, reasonable, and adequate compromise.

34.     Lead Counsel have considered the risks of continued litigation, the likelihood of success on the pending motions for reconsideration and to dismiss, and getting past summary judgment after expensive fact and expert discovery and, if successful, the risk, expense, and length of time to prosecute the litigation through trial and the inevitable subsequent appeals. Lead Counsel

- 8 -

have also considered the substantial monetary benefit provided by the settlement in light of the risk of taking the case to trial. Lead Plaintiff was a participant in this assessment and was consulted with, and kept apprised concerning the settlement negotiations.

35.    Plaintiff's Counsel are actively engaged in complex federal civil litigation, particularly the litigation of securities class actions. We believe that our reputations as attorneys who are unafraid to zealously carry a meritorious case through the trial and appellate levels gave us a strong position in engaging in settlement negotiations with Defendants.

36.    Plaintiff's Counsel respectfully submit that, under the circumstances, the settlement represents an excellent result for the Class. The settlement will provide Class Members with a benefit without the risk of zero recovery if the litigation were to continue and be unsuccessful.

37.    Indeed, the following factors, which have been cited by the Second Circuit as the pertinent criteria for evaluating the fairness of a proposed settlement, counsel in favor of approval of the settlement: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Each of these factors supports approval of the settlement.

## VI.    FACTORS TO BE CONSIDERED IN SUPPORT OF THE REQUESTED ATTORNEYS' FEE AWARD

38.    The Notice provides that Lead Counsel may apply for an award of attorneys' fees of 25% of the Settlement Fund, or $937,500, plus expenses not to exceed $75,000.

- 9 -

39.     As set forth in Lead Counsel's Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses, Plaintiff's Counsel are requesting fees in that amount and expenses of $43,506.31.

40.     Plaintiff's Counsel achieved this very favorable result for the Class at great risk and substantial expense to themselves.  They were unwavering in their dedication to the interests of the Class and their investment of the time and resources necessary to bring this litigation to a successful conclusion.  The requested fee is reasonable based on the quality of Plaintiff's Counsel's work and the substantial benefit obtained for the Class.

41.     The prosecution of this action required Plaintiff's Counsel and their paraprofessionals to perform 1,398.65 hours of work and incur $43,506.31 in expenses.

42.     The resulting lodestar totals $633,809.75.  A 25% fee represents a 1.48 multiplier, which is well within the range of multipliers awarded in similar cases.

43.     This case was vigorously litigated and settled only after Plaintiff's Counsel had, *inter alia*: (i) filed amended complaints in this action; (ii) opposed Agria and the Underwriter Defendants' motion to dismiss; (iii) sought reconsideration of the Order dismissing the claims against Agria and the Underwriter Defendants, including the preparation of a proposed second amended complaint; (iv) drafted a separate amended complaint against only the Individual Defendants and BCL; (v) consulted with experts; and (vi) assessed the risks of prevailing on Lead Plaintiff's claims at trial. These efforts and others on the part of Plaintiff's Counsel are described in detail throughout this Declaration.

44.     For our extensive efforts on behalf of the Class, Plaintiff's Counsel are applying for compensation from the Settlement Fund on a percentage basis, and seek the Court's approval of the fee percentage negotiated between Lead Counsel and the Lead Plaintiff.  The percentage method is

- 10 -

the appropriate method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum recovery in the shortest amount of time required under the circumstances. In addition, here the percentage method is particularly appropriate given the outstanding result and the circumstances under which it was achieved.

45.     Plaintiff's Counsel's compensation for the services rendered is wholly contingent on obtaining a favorable result for the Class. The expenses incurred in the prosecution of the litigation are set forth in the accompanying declarations of Plaintiff's Counsel and were advanced by Plaintiff's Counsel on a purely contingent basis. Plaintiff's Counsel, in seeking expenses, have declared that the expenses are reflected in the books and records maintained by the firms and are an accurate recording of the expenses incurred. In total, Plaintiff's Counsel have incurred expenses in the amount of $43,506.31. Included in this amount are the fees paid to the consultants, investigators, and experts, all of whom provided Lead Plaintiff and his counsel with extensive assistance during this litigation. We respectfully submit that all of these expenses are reasonable and were necessarily incurred in connection with the prosecution of this litigation.

**A.      Extent of Litigation**

46.     As described above, this case was settled only after Plaintiff's Counsel had conducted an investigation into the Class's claims, thoroughly researched the facts and law applicable to the Class's claims and Defendants' defenses, consulted with experts, considered the risks of continued litigation, and engaged in settlement negotiations with Defendants' counsel, resulting in a settlement for the Class.

47.     In addition to Lead Counsel, two other firms, Holzer Holzer & Fistel, LLC ("Holzer") and Dyer & Berens LLP ("D&B") conducted work for the benefit of the Class. More specifically,

- 11 -

Holzer, at Lead Counsel's direction, assisted with the preparation of various documents filed in this case, including, among others, the Consolidated Complaint and Lead Plaintiff's opposition to Agria and the Underwriter Defendants' motion to dismiss. The firm also conferred with Lead Counsel regarding case strategy and assisted with keeping Lead Plaintiff informed throughout the litigation on the progress of the case. D&B undertook limited projects ranging from researching discrete lead plaintiff issues, to projects relating to the potential amendment of the operative complaint, to specific assignments concerning opposing the motion to dismiss. By way of example, D&B researched and drafted a fifteen-page, single-spaced memorandum regarding the case as pled, issues that would (and did) arise on a motion to dismiss, the pros and cons of seeking leave to add a §10(b) claim, class period statements which could potentially support a §10(b) claim, facts suggesting that the §10(b) class period statements were false and misleading when made and were made with scienter, and additional defendants which potentially could be named in such a claim. Thereafter, D&B provided feedback and suggested edits to Lead Counsel with respect to the Consolidated Complaint and later assisted in the drafting of certain sections of Lead Plaintiff's opposition to the motion to dismiss, as assigned by Lead Counsel.

### B. The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk, Contingent Securities Cases

48.     This litigation was undertaken by Plaintiff's Counsel on a wholly-contingent basis. From the outset, we understood that we were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, we were obligated to assure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of the litigation and that funds were available to compensate staff and to pay for the considerable out-of-pocket costs which a case such as this entails.

- 12 -

591346_1

49.     Because of the nature of a contingent practice where cases are predominantly "big cases" lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. With this case having already taken more than two and one-half years, the financial burden on contingent fee counsel is far greater than on a firm that is paid on an ongoing basis.

50.     In addition to advancing litigation expenses and paying overhead, we faced the possibility of no recovery. It is incorrect to presume that a law firm handling complex contingent litigation always wins. Tens of thousands of hours have been expended in losing efforts. The so called "risk of litigation" is very real in this type of case.

51.     There are numerous cases where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation. It is only because defendants and their counsel know that the leading members of the plaintiffs' securities bar are prepared to, and will, force a resolution on the merits and go to trial, or pursue appeals if necessary, that meaningful settlements in actions such as this can occur.

52.     We are aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel. Indeed, federal appellate reports are filled with opinions affirming dismissals with prejudice in securities cases. *See, e.g., Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003); *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424 (5th Cir. 2002); *ABC Arbitrage v. Tchuruk*, 291 F.3d 336 (5th Cir. 2002); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002); *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002); *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir.

- 13 -

2001); *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194 (11th Cir. 2001); *Suna v. Bailey Corp.*, 107

F.3d 64 (1st Cir. 1997); *Chill v. GE*, 101 F.3d 263 (2d Cir. 1996); *Glassman v. Computervision*

*Corp.*, 90 F.3d 617 (1st Cir. 1996); *Lovelace v. Software Spectrum*, 78 F.3d 1015 (5th Cir. 1996);

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d

Cir. 1996); *Acito v. IMCERA Group*, 47 F.3d 47 (2d Cir. 1995); *Hillson Partners Ltd. P'ship v.*

*Adage, Inc.*, 42 F.3d 204 (4th Cir. 1994); *Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994); *Kowal v.*

*MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994); *Shields v. Citytrust Bancorp.*, 25 F.3d 1124

(2d Cir. 1994); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994); *Arazie v. Mullane*,

2 F.3d 1456 (7th Cir. 1993); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993);

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993); *Raab v. Gen. Physics Corp.*, 4 F.3d

286 (4th Cir. 1993).

      53.     The many appellate decisions affirming summary judgments and directed verdicts for

defendants show that surviving a motion to dismiss is no guaranty of recovery. *See In re Digi Int'l,*

*Inc. Sec. Litig.*, 14 Fed. Appx. 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir.

2001); *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542

(6th Cir. 1999); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Longman v. Food Lion,*

*Inc.*, 197 F.3d 675 (4th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *In re*

*Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Levitin v. PaineWebber, Inc.*, 159 F.3d

698 (2d Cir. 1998); *Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997).  Moreover, even plaintiffs

who succeed at trial may find their judgment overturned on appeal. *See, e.g., Anixter v. Home-Stake*

*Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades

of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc) (reversing plaintiffs'

verdict for securities fraud and ordering entry of judgment for defendants); *Ward v. Succession of*

- 14 -

*Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (same).

54.     Losses such as those cited above are exceedingly expensive.  The fees that are awarded are used to cover enormous overhead expenses incurred during the course of the litigation and are taxed by federal, state, and local authorities.  Moreover, changes in the law through legislation or judicial decree can be catastrophic, frequently affecting all of contingent fee counsel's pending cases.

55.     Courts have repeatedly held that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies.  Vigorous private enforcement of the federal securities laws and state corporation laws can occur only if private plaintiffs can obtain parity in representation with that available to large corporate interests.  If this important public policy is to be carried out, the courts must award fees which will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

56.     Plaintiff's Counsel undertook to act for Lead Plaintiff and the Class in this matter, aware that they would be compensated only by obtaining a successful result.  The benefits conferred on the Class by this settlement are particularly noteworthy in that a cash settlement fund worth $3.75 million (plus accrued interest) was obtained for the Class, ***despite that the Court had granted Agria and the Underwriter Defendants' motion to dismiss the Consolidated Complaint filed against them***.

- 15 -

### C.       Standing and Expertise of Plaintiff's Counsel

57.       The expertise and experience of Plaintiff's Counsel is described in the declarations of counsel submitted herewith.  We are well-known among our peers and courts across the country as among the most experienced and skilled practitioners in the securities litigation field.

### D.       Standing and Caliber of Opposition Counsel

58.       The Defendants are represented by very experienced counsel from Latham & Watkins LLP and Linklaters LLP, which possess substantial experience, expertise, and resources in the defense of complex securities litigation.  In the face of this formidable opposition, Plaintiff's Counsel developed their case so as to persuade the Defendants to settle the case on a basis favorable to the Class.

## VII.   CONCLUSION

59.       For the reasons set forth above and in the accompanying Memorandum of Law in Support of Motion for Final Approval of Settlement and Plan of Distribution of Settlement Proceeds, and Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses, we respectfully submit that: (a) the settlement is fair, reasonable, and adequate and should be approved; (b) the Plan of Distribution of settlement proceeds represents a fair method for distribution of the Net Settlement Fund among Class Members and should also be approved; and (c) the request for attorneys' fees and expenses should be granted.

591346_1

I declare under penalty of perjury that the foregoing is true and correct.   Executed in Melville, New York this 30th day of December 2010.

DAVID A. ROSENFELD

591346_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 30, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 30, 2010.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: elleng@rgrdlaw.com

# Mailing Information for a Case 1:08-cv-03536-WHP

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **Larry Byrne**
  larry.byrne@linklaters.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com

- **Jason Samuel Cowart**
  jscowart@pomlaw.com

- **Marshall Pierce Dees**
  mdees@holzerlaw.com

- **James Farrell**
  james.farrell@lw.com

- **Michael Ira Fistel , Jr**
  mfistel@holzerlaw.com,cyoung@holzerlaw.com,cmoore@holzerlaw.com

- **Wendy Peterson Harper**
  wendy.harper@lw.com,larry.carlson@lw.com,james.farrell@lw.com

- **Paul Stephen Hessler**
  paul.hessler@linklaters.com

- **D. Seamus Kaskela**
  skaskela@btkmc.com

- **Fei-Lu Qian**
  flqian@pomlaw.com

- **A. Hyun Rich**
  ally.rich@linklaters.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Ellen Anne Gusikoff Stewart**

elleng@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Robert J. Dyer**                                                            **, III**
Dyer & Berens L.L.P. (CO)
303 East 17th, Avenue
Suite 300
Denver, CO 80203

**Corey D. Holzer**
Holzer Holzer & Cannon LLC
1117 Perimeter Center West
E-107
Atlanta, GA 30338

**Richard A. Maniskas**
Schiffrin & Barroway L.L.P.
280 King of Prussia Road
Radnor, PA 19087

**David M. Promisloff**
Barroway Topaz Kessler Meltzer & Check,LLP
280 King of Prussia Road
Radnor, PA 19087

**Ellen Gusihoff Stewart**
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101